IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CONRAD V. SALAZAR,**

    **Plaintiff,**

**v.**                                                           **No. 13-cv-0002 LH/SMV**

**FNU MENDOZA, FNU OCHOA,**
**SGT. JAQUEZ, and BENJAMIN ONTIVEROS,**

    **Defendants.**

**MAGISTRATE JUDGE'S**
**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before me on Defendants' Motion for Summary Judgment ("Motion") [Doc. 54], filed on October 15, 2015. Plaintiff responded on November 17, 2015. [Doc. 55]. Defendants replied on December 21, 2015. [Doc. 60]. On February 24, 2015, the Honorable C. LeRoy Hansen, Senior United States District Judge, referred this matter to me to for analysis and a recommended disposition. [Doc. 36]. Having reviewed the pertinent filings and relevant law, and being otherwise fully advised in the premises, I recommend that Defendants' Motion be granted, all of Plaintiff's remaining federal claims be dismissed with prejudice, and his remaining state claims be dismissed without prejudice for lack of jurisdiction.

**Factual Background**

Plaintiff arrived at the Otero County Prison Facility ("OCPF") on September 27, 2012. [Doc. 53-6] at 1. He was placed in administrative segregation. *Id*. at 11. As part of the intake process, staff evaluated Plaintiff's health and noted that he was suffering from a host of health conditions. [Doc. 53-4] at 6, 13 (notes from assessment indicating Plaintiff was suffering from

hepatitis C, hypertension, major depression, hyperlipidemia, hypogonadism, and active withdrawal from heroin and cocaine).

Plaintiff was deemed ready to be transferred into the general population on October 10, 2012. *Id*. at 22. He was informed by Defendants Ochoa and Jaquez that the piercing in his neck/back area would have to be removed before the transfer. [Doc. 53-1] at 3; [Doc. 22] at 8. The piercing was a U-shaped metal bar with balls on either sides of the "U." [Doc. 53-2] at 1; [Doc. 55] at 6.

According to Plaintiff, at the instruction of Defendant Ochoa, Defendant Mendoza, a maintenance worker, brought wire cutters for Defendant Ontiveros to use to cut off one end of the bar. [Doc. 22] at 9. Plaintiff told Defendants that he would not allow the wire cutters to be used unless they were placed in an autoclave.[1] *Id*. Plaintiff alleges that the wire cutters were "rusted, oily, [and] contaminated," but that Defendant Ontiveros "used 'green alcohol/soap' to 'ster[i]lize' the wire cutters." *Id*. Defendant Ontiveros cut the bar at one end, which allowed him to pull it out of Plaintiff's back/neck area. *Id*. at 10.

Plaintiff alleges that his blood became contaminated and the site around the piercing "was very painful and [bled] and became infected." *Id*. He alleges that over the next few days, his jaw muscles felt tight, other muscles locked up and released, his joints were stiff, he had a metallic taste in his mouth, and felt ill for the next weeks. *Id*.

### Procedural Background

---

[1] An autoclave is "an apparatus in which special conditions (as high or low pressure or temperature) can be established for a variety of applications; *especially*: an apparatus (as for sterilizing) using steam under high pressure." "autoclave." Merriam-Webster Dictionary, 2016. http://www.merriam-webster.com (4 Mar. 2016).

Plaintiff filed a § 1983 Complaint on January 3, 2013.  [Doc. 1].  With permission of the Court [Doc. 20], Plaintiff filed an amended complaint [Doc. 22], alleging violations of his Eight Amendment rights as well as state-law tort claims.  *Id*. at 7, 12–13.  Judge Hansen dismissed Defendant John Heftley and permitted Defendant to file a second amended complaint in a Memorandum Order and Opinion filed on September 16, 2014.  [Doc. 25].

Plaintiff filed his second amended complaint on October 6, 2014.[2]  [Doc. 26]. Defendants Ochoa, Jaquez, Mendoza, and Ontiveros filed an answer to Plaintiff's second amended complaint on April 14, 2015.  [Doc. 40].  The Court ordered Defendants to submit a *Martinez* Report on August 20, 2015.  [Doc. 50].  Defendants submitted their *Martinez* Report [Doc. 53], as well as a Motion for Summary Judgment [Doc. 54], on October 15, 2015.  Plaintiff responded on November 20, 2015.  [Doc. 55].  Defendants replied on December 21, 2015. [Doc. 60].

## Summary Judgment Standard

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant must support its request by "citing to particular parts of materials in the record, including depositions, documents,  electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1)(A).

---

[2] The Court clarified that Plaintiff's operative complaint consists of [Doc. 22] and [Doc. 26].  [Doc. 37].

The movant has the initial burden of establishing that there is an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If this burden is met, the non-movant must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1526 n.11 (10th Cir. 1992). Although all facts are construed in favor of the non-movant, he still has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

A pro se non-movant must "identify specific facts that show the existence of a genuine issue of material fact." *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (internal quotation marks omitted). Conclusory allegations are insufficient to establish an issue of fact that would defeat the motion. *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1180 (10th Cir. 2013).

In a suit brought by a pro se prisoner, a court may order the defendants to investigate the plaintiff's claims and submit a report of that investigation, called a *Martinez* Report. *See Hall*, 935 F.2d at 1109; *Martinez v. Aaron*, 570 F.2d 317, 319–20 (10th Cir. 1978). A court may use the *Martinez* Report to grant summary judgment upon motion of the defendants. *Hall*, 935 F.2d at 1009–13; see also *Celotex*, 477 U.S. at 326 (courts possess the authority to enter summary judgment sua sponte, so long as the losing party is on notice that she must come forward with all her evidence).

## Analysis

According to Plaintiff, Defendant Ochoa ordered the piercing removed and Defendant Jaquez did not interfere with that order. Defendant Mendoza brought a tool to use for the removal, and Defendant Ontiveros actually removed the piercing. Plaintiff claims that these actions "posed an unreasonable [risk] of serious damage to [his] health," thereby violating his Eighth Amendment rights. [Doc. 22] at 7. Plaintiff also alleges state law claims of negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress based on the same set of actions. *Id*. at 11–13. After considering the facts in the light most favorable to Plaintiff, I find that there is no genuine issue of material fact and that Defendants are entitled to summary judgment on the federal claims as a matter of law. I further recommend that the Court decline to exercise its supplemental jurisdiction over Plaintiff's state law claims.

## Eighth Amendment Claims

I. **In order to succeed on a claim that his Eighth Amendment rights were violated, a plaintiff must demonstrate that the defendant(s) knew of and disregarded an excessive risk to his health.**

"A prison official violates an inmate's clearly established Eighth Amendment rights if he acts with deliberate indifference to an inmate's serious medical needs—if he knows of and disregards an excessive risk to inmate health or safety." *Garrett v. Stratman*, 254 F.3d 946, 949 (10th Cir. 2001) (internal quotation marks omitted). "With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). An Eighth Amendment claim of deliberate indifference

requires the plaintiff to demonstrate 1) an objective component and 2) a subjective component. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

The objective component of the test is met if the "harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause" of the Eighth Amendment. *Mata v. Saiz,* 427 F.3d 745, 753 (10th Cir. 2005) (internal quotation marks omitted). Analyzing whether the plaintiff has satisfied the objective component "requires more than a scientific and statistical inquiry into the seriousness of the potential harm." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Courts should also consider "whether society considers the risk that the [plaintiff] complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Id*. "In other words, the [plaintiff] must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id*. *See Mata*, 427 F.3d at 753–55 (severe chest pain, non-fatal heart attack, and damage to heart could meet objective component, assuming causation had been established); *Oxendine v. Kaplan*, 241 F.3d 1272, 1278 (10th Cir. 2001) (objective component met where the plaintiff's severed fingertip turned black from necrosis and could not be reattached); *Weatherford v. Taylor*, No. 09-7018, 347 F. App'x 400, 403–04 (10th Cir. Oct. 5, 2009) (unpublished) (severe chest pain and a subsequent fatal heart attack meets the objective component); *Dicino v. Renfro*, No. 12-cv-01274-WYD-KLM, 2013 WL 2317242 (D. Colo. May 28, 2013) (unpublished) (finding that the plaintiff stated a claim for deliberate indifference to serious medical need where he received no treatment for two months for a painful, full-body rash, while he waited to see a physician and then never received the prescribed steroids).

The subjective component requires "evidence of the prison official's culpable state of mind." *Mata*, 427 F.3d at 751.  The plaintiff must show that the defendant(s) "knew [that the plaintiff] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."  *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (internal quotation marks omitted).  That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer,* 511 U.S. at 837. The Tenth Circuit has also made it clear that the "accidental or inadvertent failure to provide adequate medical care, or negligent diagnosis or treatment of a medical condition do not constitute a medical wrong under the Eighth Amendment."  *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir. 1980).  "*A fortiori*, a mere difference of opinion between the prison's medical staff and the [plaintiff] as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment."  *Id.*  The fact that the plaintiff may prefer or believe that another course of treatment is better or warranted is not evidence of a constitutional violation.  *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) ("[A plaintiff] who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation.").

II. **Even assuming that Defendants used an inadequately-cleaned tool and further assuming that doing so satisfied the objective component, the facts taken in the light most favorable to Plaintiff do not show that Defendants recklessly disregarded an excessive risk to Plaintiff's health.**

For the purposes of this PF&RD, I will assume without deciding that Defendants used an inadequately cleaned tool and that using such a tool to remove a piercing poses an excessive risk of harm, thereby meeting the objective component of the test for deliberate indifference.  I will

also assume without deciding that Plaintiff would be able to make a causal connection between the use of such a tool and the symptoms that he says resulted from the use.[3]

When considered in the light most favorable to him, the facts according to Plaintiff do not demonstrate that any Defendant "recklessly" disregarded a risk to his health. *Mata*, 427 F.3d at 753. He states that "[a]ll Defendants were in the little med-room" when his piercing was removed. [Doc. 22] at 9. All Defendants saw Ontiveros attempt to sterilize the wire cutters with "green alcohol/soap." *Id*. Plaintiff does not allege that Defendants knew that the green alcohol/soap would not properly sterilize the wire cutters and recklessly chose to disregard that risk. Indeed, he alleged just the opposite—that Defendants believed that the green alcohol was sufficient for sterilization. [Doc. 55-1] at 6 (Plaintiff states that "OCPF staff told me on October 10, 2012, [that] they did not have an autoclave and said green alcohol would sterilize [Defendant Mendoza's] pliers."). In addition, Defendant Ontiveros stated in his affidavit that he believed the tool he used to remove the piercing was sterilized. *See* [Doc. 53-2] at 2.

Thus, Defendants did not think that the use of the tool posed a risk, because they believed it was sterilized. In other words, they recognized the risk of infection and took steps to avoid it. This is not reckless disregard; in fact, because they believed there was no risk, they were not "disregarding" anything. *See Mata v. Saiz,* 427 F.3d 745, 758 (10th Cir. 2005) (denying defendant's motion for summary judgment where plaintiff, along with other inmates, complained to defendant about her severe chest pain, but defendant did not notify medical staff or take other action); *Al-Turki v. Ballard*, 10-CV-02404-WJM-CBS, 2013 WL 589174, at *8 (D. Colo. Feb.

---

[3] As the record now stands, there is no evidence on which a reasonable juror could rely to attribute Plaintiff's alleged symptoms to the use of the tool. A nurse's note from October 23, 2012, 13 days after the piercing was removed, states, "[no signs or symptoms] of infection, [no] redness, [no] discharge, healing appropriately." [Doc. 53-5] at 8.

14, 2013) (finding that sufficient evidence existed to satisfy the subjective component because the official took no action to help plaintiff and when asked about helping prisoners who were in pain, stated "[m]ost of the time, I don't give a damn. . . . Why should I? It's not my job.  I did my job.  It's out of my hands.").  All parties agree that Defendants believed the tool was sterile before it was used to remove Plaintiff's piercing.

Plaintiff does not comment on the state of mind of Defendants Jaquez, Mendoza, or Ontiveros at all. He states he "believes" that Defendant Ochoa maliciously ordered Plaintiff's piercing to be removed with Defendant Mendoza's tool in retaliation for Plaintiff's request to be transferred to the general population. [Doc. 22] at 8, 12.  Other than his unsupported declaration, there is no evidence to support the allegation that Defendant Ochoa was retaliating against Plaintiff, rather than enforcing an OCPF policy requiring inmates to remove all jewelry (other than a wedding ring) before they are allowed into the general population.[4]  Even if he were correct, Plaintiff's allegations go to what he perceives to be Defendant Ochoa's bad *motive* in ordering the piercing removed with Defendant Mendoza's tool.  Had Defendant Ochoa issued his order and then left the room without waiting to see if the wire cutters were sterilized, Plaintiff's allegation might hold water.  According to Plaintiff, however, Defendant Ochoa was in the room when Defendant Ontiveros used the green alcohol/soap to sterilize the wire cutters.  Because Defendant Ochoa watched Defendant Ontiveros sterilize the wire cutters, he cannot be said to have recklessly disregarded an excessive risk to Plaintiff's health.  Plaintiff's comments to

---

[4] In her affidavit, OCPF Health Services Administrator Chris Pascale stated that "[w]hile there is not a written policy regarding piercing removal, it is OCPF's standard practice and procedure to require all inmates' piercings to be removed prior to placing inmates in the general population." [Doc. 53-1] at 2.  *See also* [Doc. 53-8] at 4–5 (OCPF Detainee Handbook listing a wedding ring as the only jewelry inmates are permitted to keep).

9

Defendants about an autoclave being necessary were not enough to render unreasonable Defendants' belief that the tool was sterile.

### State Law Claims

In addition to his claim under the Eighth Amendment, Plaintiff also alleges state law claims of negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. [Doc. 22] at 11–13. Federal courts may to decline to exercise supplemental jurisdiction over a state law claim "if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because I find that Plaintiff's Eighth Amendment rights were not violated, I recommend that the Court decline to exercise its supplemental jurisdiction over Plaintiff's state law claims.

### Conclusions and Recommended Disposition

For the reasons set forth herein, I recommend that Defendants' Motion [Doc. 54] be **GRANTED**, all of Plaintiff's remaining federal claims be **DISMISSED with prejudice**, and his remaining state claims be **DISMISSED without prejudice** for lack of jurisdiction.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**